Jpril 17. The judges delivered the following opinions.†
Judge Coalter:
I shall first consider what estate Hannah Lupton took under the clause, devising the land “ to her and to the “ heirs of her body, and to them and their heirs and as- « signs forever,” independently of the clause, «that if she “ should decease not having any lawful heirs of her body,” then to David Lupton, and as if this latter clause was not in the will. I shall next consider, what effect that clause will have.
That the word heirs, as well as issue, may be construed a word of purchase, as descriptive of the persons to take, if that shall appear to be the intention of the testator, and is not necessarily a word of limitation, appears to me to be settled law. This has been settled in England in many cases, of which Archer’s case,(a) the case of Doe vs. Laming, (b) Perrin vs. Blake,(c) Lisle vs. Puller,(d) and Bagshaw vs. Spencer,(e) are examples or proofs. *197 The same doctrine has been recognized in this court in various cases, and amongst others, in Roy vs. Garnet,(f) and in Warner vs. Mason, (g)
This intention is sometimes manifested by superadding words of inheritance or limitation to the word heirs, so as to shew that they were to be a new stock, or terminus a quo, the inheritance was to descend 5 sometimes the intention has been manifested by other provisions and expressions in the will, equally going to shew, that the legal operation of the word heirs, as a word of limitation, is controlled, and converted into a word of purchase 5 the intention being that they shall take as purchasers, not in the course of descent.
There is nothing illegal or contrary to the rules of law', in such intention. The only questions are, whether the persons intended to take are sufficiently described ? And can they, as purchasers, take what it was intended they should take ?
This, I believe, is the first case, except that of Boy and Garnet, which has come before this court, in which the construction has arisen from words of limitation being superadded to the word heirs.
In that case, the testator devised the land, “ to his son ic James for and during his natural life, remainder in trust “ for the use of the first and every other son of his son ** James, who shall survive him, in tail male, equally to be divided.” It is clear, from the opinion expressed by. the president of the court, that had the will stopped here, the life estate of James would not have been enlarged, and that the surviving sons not only might, but would, necessarily, take as purchasers, not in succession, but as tenants in common. But the will did not stop here. It is further provided, “ but if my son James should die with-<c out male issue, then I give to Moscoe, &c.” It was contended, that the words male issue must be construed such *198 *ssue ma^e» that is, a son or sons surviving. On the other side it was admitted, that if there be a devise to A, remainder to all his sons in tail, and if he die without issue male, then to B, that these latter words will not enlarge the estate previously given, because as the first part of the devise had comprehended all the issue male, the latter part can have reference to none other, and therefore shall be construed to mean such issue male; for, the whole male issue being comprehended, there is no necessity to enlarge the meaning of the latter words. But as in this case all the issue male were not comprehended in the first clause 5 as the sons of a deceased son would be excluded, and as the second clause clearly shewed an intention to comprehend all the male issue, it was necessary, in order to effect this general intention, that James should be considered as taking a fee tail by implication.
Such was the opinion of the president and some of the other judges. But there being some doubts with some of the other judges, they all concurred finally in a decision, on the ground of the trust created by the will.
In the case before us, it is true that the devise to Hannah is not expressly for life, and no longer$ but there are expressions in the will, such as « that she may occupy, possess and enjoy,” &c. which go to shew, that he did not consider her as taking a larger estate ; but she will take a fee tail by the clause now under consideration, unless the words heirs of her body are to be construed as meaning such persons as, at the time of her death, were issue of her body, and being so, were intended to take in fee. If this was the intention of the testator, then she only took for life. If this was not his intention in this clause, what was it ?
He did not intend, that she should take a fee simple ; otherwise, he would have given it to her, in the same way in which he gave a fee to his other children.
Did he intend to give her, in explicit terms, a fee tail ? That can hardly be presumed •, because he most probably *199 knew that would be, in fact, to give her a fee. If he, however, did not know that would be the effect, and intended a fee tail, he would have been satisfied with creating it in the ordinary way, and would not have super-added words, giving a fee simple to the issue in tail, and which, in fact, was incompatible with the estate tail, he is supposed to be creating. The very circumstance, that the heirs of the body are not to take as issue in tail, but in fee, repels the idea that he intended, by this clause, to create an estate tail, in the usual way. But we must affix some meaning to it $ and I can see none but that which is above stated. Suppose he had expressly said, “ not “ knowing whether my daughter Hannah may ever marry, or whether she will marry a provident man or not, “ I give her such a tract of land, to occupy and enjoy “ during her life ; then I give the same to all the issue of “ her body who shall survive her, whether children or “ the descendants of children, to them, their heirs and as- “ signs forever, share and share alike.” The only thing that could be said against the propriety and reasonableness of this would be, that grandchildren would lake per capita? and not per stirpes ; but the testator might well think, that even this would be. better, than that the whole should bo cut out, by the alienation of the mother, or that, never having had issue, she might devise it out of his family.
Taking this clause as the only one in the will, and supposing that there was no other, in relation to this subject, I would feel much safer in putting this construction on it, than that which would consider it an estate tail in Han - nah. i
But there is another clause, which, I will admit, (if ah the heirs of the body are not provided for, in that which I have just considered,) must, as in the case of Roy and Garnet, shew an intention, which, because it cannot be effected out by construing the estate in Hannah to be one in tail, must, for that reason, so enlarge it, although the effect of that must be totally to defeat the will. This di *200 lemma, it seems, we cannot avoid in this country. It however is one, which will not make the courts astute in implying estates tail, but in my opinion, the reverse,
But the issue are all provided for by the first clause, according to my construction; nay better provided for, as they are to take in fee. It is not necessary, therefore, to enlarge the estate in Hannah, which would have the effect of cutting down this fee simple in the issue, if estates tail were permitted here, in order to provide for the whole issue of the body. It is true, grandchildren may take per capita ; but the testator had a right to do this. The provision may be a little greater to them ; but shall we say that these after-words were intended to destroy the fee in the issue, and that they should stand merely as issue in tail | and that too in a country where there is no such estate known in the law ?
If I am right in my exposition of the first clause, I can. only expound this second as meaning, « if at the death of “ my daughter Hannah, there is no such person in being “ as I have above described, then the estate is to go to my ** son, David Lupton.”
For what purpose shall we expound these words as meaning any thing more ? The two clauses ought to stand together if they can do so, giving each a reasonable interpretation. The first clause either gave an estate tail, or it did not. If it did, then it is not necessary to resort to the second in order to give it. If it did not, then is there any ulterior provision or intention in the second clause, to effect w hich it is imperiously necessary to give it such operation as to destroy the meaning of the first ü I can see none. On the contrary, to. convert the estate into a tail is entirely to defeat the intention, supposing it to be either the one or the other.
For these reasons, as at present advised, I cannot concur in reversing the judgment. If my opinion was to have the effect of affirming it, I might take more time to satisfy myself on the subject. But, as this is perhaps the *201 first case in this court, in which the construction is placed on the superadded words of limitation ; and, as from the change of the course of descents, and the destruction of ° estates tail, by our acts, those words may be entitled to even greater weight here, than in England, in ascertaining their intention, I prefer leaving the question open for further consideration, should that hereafter be found to be necessary.
In England, the estate is enlarged in order to effect the intention, and that the fee may go as near as may be, according to that intention. Here we enlarge it, because the after words can receive no other fair construction; and as they cannot be rejected, we must suppose the testator intended an estate, which cannot exist, according to our laws, and that the intention therefore must be defeated, not by the court, but by the law. Where, however, we can give both clauses a reasonable interpretation, so that both can stand and have effect, 1 think we ought to do so.
Judge Brooke, was of opinion, that the judgment of the superior court ought to be reversed.
Judge ItoAXL:
The construction in this case depends upon two clauses in the will of Joseph Lupton, dated the 9th of March, 1791. By the first of those clauses, he devises the premises in question to Ms daughter “ Hannah Lupton and to cl her and the heirs of her body, and to them and their « heirs and assigns forever.” These expressions “ and to her,” and “ to them,” while they are awkward expressions, are mere pleonasms in language. They express nothing more than the clause imported without them. This is evident, not only from a mere reading of the clause itself, but also from observing that the same form of expression is used in most of the other devises in the will, and in which an estate of inheritance in the first taker, was clearly intended. The first expressionsu and to her," *202 still only means Hannah Lupton, and it is to be construed as if after the word « her,” the words “ the said Hannah Lupton” (which are understood1) had been inserted ; and the second expression “ and to them” is also fo be construed in like manner. It is to be construed, as if the words “ the said heirs of her body” which are also understood, had been expressly repeated, immediately following the word “ them :” and in that case, the clause would stand thus, “ and to them the said heirs of the body « of Hannah Lupton and their heirs and assigns forever.” This reading would cut up by the roots, all pretension, that under the word “ them” is understood, a different idea of the character of the parties, from that which was conveyed by the previous words “ heirs of her body,” and that the words last mentioned, which are clearly words of limitation, are to be thereby converted into words of purchase. On no other ground than this, can it be contended that Hannah only took a life estate, and that the heirs of her body, (in exclusion of her,) took, as a new stock and as purchasers, the inheritance of the estate in question. It must here be remarked, that the words in this case “ to Hannah Lupton and the heirs of her body,” are peculiarly strong and appropriate to shew, that they take by way of limitation, and that these heirs must be understood to take in succession ; and there is nothing in the will to shew a contrary intention. In the case of Doe vs. Laming,(h) the devise was precisely like the clause before us, throwing out the superfluous words I have above remarked upon, and with the exception that there were some circumstances and expressions in that case, not existing in this, which caused the words to be construed, in v that case, as words of purchase. There is an exact similitude between that case and this, in the devise being to {< A, and the heirs of her body, and to their heirs and as-u signs forever.” Although that devise was adjudged to *203 give an estate by purchase, and not by limitation, to the heirs of the body of A, it was not so adjudged by reason of the last, or superfluous words in the devise contained ; nor even by reason of the term 4‘ assigns,” which is therein used. Had there been nothing else in that case than in this devise as I have stated it, the estate would have been adjudged to be a limitation, and not a purchase. But, there were such other and ulterior circumstances in that case, and on the ground of them, only, the decision of the court was founded. In the first place, after the words heirs of her body Umfully begotten, were inserted the words “ as well females as males,” and the estate was to be divided equally between them; which division seemed inconsistent with the idea of a succession of the heirsj and secondly and principally, as the lands were Gavelkind lands, and it was the testator’s clear intention to provide for her female heirs, as well as male, which would not take place, in that tenure, by construing the clause to be a limitation, the words were construed to be words of purchase, to let in these females, and effectuate the manifest intention of the testator. But for these circumstances, and particularly the last, the words would have been construed to be words of limitation, and not words of purchase.
But in the case before ns, there'are no words importing that the heirs were not to take in succession. On the contrary, the next clause clearly manifests that idea in the most explicit terms. Again; there is nothing in this will, like the one just mentioned, whereby, by construing the words in their natural and ordinary sense, the intention of the testator would be frustrated. I do not see that that effect could be any how produced, by referring to our act of descents, if we were at liberty to do so. But we have not that liberty. We are confined in our construction, in this particular, both by the terms of the acts of 177G and 1785, and by the decisions of this court, upon them. All these have referred to the lex temporis, on this subject, and have adopted it as the rule. They have adopted the law on this subject, as it stood in the year 1776.
*204 I am therefore clearly of opinion, that if there were else in this will than the first clause, Hannah Lupton took an estate tail in the premises in question. But there is another clause in that will, which is still more conclusive on the subject. By that clause it is provided, that, if Hannah Lupton should die “ not having any lawful heirs of her body,” then the land aforesaid should go to David Lupton. Whatever may be said of the first clause, this clause makes the testator’s meaning more explicit 5 and if necessary, it would be construed even to alter the first clause, in this respect. This last clause clearly gives an implied estate tail, to Hannah. This construction is made still more clear by another clause in favor of Hannah, immediately succeeding, in relation to another tract of land, couched in precisely the same form of words, with this difference only, that the words giving the implied entail, as aforesaid, are in the same clause, with the previous words. It must at least be allowed to a testator to correct and explain his meaning by the subsequent words of the same clause in his will. To say nothing of other cases on this subject, those of Bill and Burrow,(i) Tate and Talley,(j) Eldridge and Fisher,(k) Allen and Parham,(l) and Sydnor and Sydnor,(m) in this court, equally shew, that a devise, like that before us, carries an estate tail by implication, and comes within the operation of the act of 1776, upon the subject.
If any support was wanting to this construction, from the English cases, it may readily be found. One case which is more than in point, is found in Morris vs. Gray,(n) and in Fearne.(o) In that case the devise was to L “for life, and then to the heirs of the body of L, and their “ heirs, and if she died without such heir of her body, then “ overand it was held to be an estate tail in L. That *205 case is even stronger than the case before us, against the idea of an estate tail, in this; that the devise was to L, for life: but even that circumstance did not prevent the construction aforesaid : And the last words, and if she died without such heir, like the last clause in the will before us, clinched that construction, and manifestly imported an estate tail in L, notwithstanding the words for life therein used ; which, however, are not found in the case before us.
On the first clause in this will, therefore, standing singly, I should be clearly of opinion, that Hannah Lupton took an estate tail in the land in question ; but that construction is put beyond all doubt by the clause last mentioned. The result of which is that, in my opinion, the judgment before us must beJreversed, and entered for (he appellant. Judgment reversed.

 Judge Cabell was absent.

 2 Co. 66.

 2 Burr. 1100.

 4 Burr. 2579.

 2 Stra. 729.

 2 Atk. 246,577.

 2 Wash. 9.

 5 Mun. 212.

 2 Burr. 1102.

 3 Call, 342.

Ib. 354.

 1 H. and M. 559.

 5 Mun. 467.

 2 Mun. 263.

 Cited in 2 Burr. 1102.

 p. 119.